SEARS, ROEBUCK AND CO. AND AFFILIATED
CORPORATIONS, PETITIONER v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 2165-89.          Filed April 24, 1991.

*Frederic W. Hickman, Patrick A. Heffernan, Michael M.
Conway, Michael A. Clark, Richard Bromley, Paul S.
Caselton, Bradford L. Ferguson, Burton H. Litwin,* and
*Michael R. Schlessinger,* for the petitioner.
*Beth L. Williams, Teri A. Frank, Charles W. Maurer, Jr.,*
and *Christopher J. Faiferlick,* for the respondent.

## SUPPLEMENTAL OPINION

COHEN, *Judge:* On January 24, 1991, our opinion in the
above case was filed at 96 T.C. 61. That opinion addressed
two issues, the "insurance premiums issue" and the "mort-
gage guaranty insurance issue." The insurance premiums
issue was decided in favor of petitioner, and the mortgage
guaranty insurance issue was decided in favor of respon-
dent.

On February 21, 1991, respondent filed a motion to revise
our opinion on the mortgage guaranty insurance issue.
Respondent requests certain revisions to our opinion to
insure that the decision to be entered in this case accurately
reflects our holding. Petitioner objects to respondent's
motion.

In the notice of deficiency, as set forth at 96 T.C. 85,
respondent determined that the PMI companies did not
incur a loss until the insured lender obtained title to the
mortgaged property. Respondent consistently maintained
this position during trial and in his post-trial briefs.
Respondent's contention, as stated at 96 T.C. 105, is that
"unpaid losses are merely 'estimates of potential losses' and
have not been 'incurred' for Federal income tax purposes
until the insured lender has acquired title to the mortgaged
property." This position relies in part on section 1.832-
4(a)(5), Income Tax Regs., which provides that computation

of losses incurred but unpaid at the close of a year must represent "actual unpaid losses as nearly as it is possible to ascertain them."

As stated in its objection to respondent's pending motion, petitioner contends that:

the appropriate event is the borrower's default, which is both the event (i) that, in actual practice, establishes the insurer's liability for the ultimate consequences of the default and (ii) for which the insurer must establish loss reserves for regulatory purposes under the Annual Statement method of computing losses required by insurance regulators. * * *

Petitioner did not report losses as of the time of default, however, but only when notice of default was given by the insured lender. Respondent, on the other hand, did not determine that the loss was not incurred until a claim was filed by the insured lender, even though, as it appears at various places in our opinion, no payment would be made by the insurer until a claim was submitted, accompanied by tender of title, absent other arrangements described in our findings of fact. The parties and the opinion assumed that situations where foreclosure had occurred but claim had not been made were eligible for deduction as losses that were "incurred but not reported" (IBNR). 96 T.C. at 113.

After full consideration of the parties' respective positions, we concluded "that the PMI companies did not incur a loss under section 832(b)(5) until the insured lender acquired title to the mortgaged property." 96 T.C. at 114. Our conclusion reflected a choice between the two positions presented by the parties during trial and in their briefs, to wit, a decision between treating losses as incurred at the time notice of default was sent or at the time of foreclosure on the mortgaged property.

At 96 T.C. 88, we stated: "With respect to the second issue [the mortgage guaranty insurance issue], petitioner ignores the distinction between an insured event and the ultimate effect of that event on the net worth of the taxpayer." After discussing certain case law analogies, we reviewed what we considered to be a loss under the PMI insurance policies. With respect to petitioner's contention that the insured event was default under the policy, we stated:

A claim was payable if the policy was in effect during the period in which the initial delinquency, or default, occurred. This result merely reflects the coverage of the policy *if* a claim for loss is actually submitted; an insurer does not incur a loss until the initial default has caused the insured lender to acquire title to the mortgaged property. [96 T.C. at 110.]

Petitioner's arguments are reflected and adopted in the dissenting opinion of Judge Whalen. The dissenting opinion quotes at length from the majority opinion but disagrees with the majority about what fixes an insurance company's liability for purposes of estimating actual unpaid losses under section 1.832-4(a)(5), Income Tax Regs. According to the dissent, "the majority redefines the 'insured event' under a mortgage guaranty insurance policy in terms of the lender's acquisition of 'good and merchantable title to the mortgaged property.' " 96 T.C. at 116-117. At no place in the dissenting opinion is there any indication that the majority required that the lender submit a claim before the insurer could deduct a loss.

Although the substance of our opinion, in upholding respondent's position, did not purport to give any effect to the filing of a claim by the insured lender with the insurer, reference to the filing of a claim—the prerequisite to payment—appears in several places in the opinion. Respondent states that such references cast doubt on the decision to be entered under Rule 155, Tax Court Rules of Practice and Procedure, because respondent's notice of deficiency did not give any effect to the filing of a claim.

Petitioner contends that our opinion is incorrect with or without the changes requested by respondent. The issue is subject to substantial and meritorious differences of opinion, but nothing is served by perpetuating superfluous and confusing language.

Petitioner does not object to correction, requested by respondent, of a typographical error in the slip opinion. For the foregoing reasons, respondent's motion will be granted, and our opinion filed January 24, 1991, is modified as follows:

(1) At 96 T.C. 85, the adjustment to PMI Mortgage's taxable income for the taxable year ended December 31, 1981, is ($1,542,260).

(2) At 96 T.C. 88, the language ", i.e., an actual loss incurred" is added to the end of the second full paragraph on that page so that the last sentence of said paragraph is: "With respect to the second issue, petitioner ignores the distinction between an insured event and the ultimate effect of that event on the net worth of the taxpayer, i.e., an actual loss incurred."

(3) At 96 T.C. 102, the last nine words of the second full paragraph "and files a claim for loss with the insurer" are deleted.

(4) At 96 T.C. 113, the following sentence is substituted for the first full sentence of text: "Petitioner contends that 'the rule for loss recognition pressed by respondent in this case would—in effect—place PMI Companies on a non-insurance tax accounting test for accruing losses,' the 'all events' test."

(5) At 96 T.C. 114, the last six words of the first paragraph "and submits a claim for loss" are deleted.

*An appropriate order will be issued.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, SHIELDS, HAMBLEN, SWIFT, GERBER, WRIGHT, PARR, COLVIN, and HALPERN, *JJ.,* agree with this majority opinion.

WELLS and RUWE, *JJ.,* did not participate in the consideration of this opinion.

---

WHALEN, *J.,* dissenting: I respectfully dissent from the majority opinion in this case for the reasons stated in the "unpaid loss reserves of mortgage guaranty insurance subsidiaries" segment of my dissenting opinion in *Sears, Roebuck & Co. and Affiliated Corps. v. Commissioner,* 96 T.C. 61, 114 (1991).